STATE OF CONNECTICUT *v.* JOSEPH WHELAN

(12647)

PETERS, C. J., HEALEY, SHEA, DANNEHY and F. HENNESSY, Js.

Argued June 10—decision released August 5, 1986

*G. Douglas Nash,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Jonathan C. Benedict,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

SHEA, J. The defendant, Joseph Whelan, was convicted, after a jury trial, of murder in violation of General Statutes § 53a-54a (a).[1] He was sentenced to a term of imprisonment of not less than twenty-five years nor more than life. From this judgment the defendant appeals, claiming that the trial court erred: (1) in allowing the state to cross-examine its own witness; (2) in refusing to charge the jury, as requested, that a prior inconsistent statement of a witness was admissible only to discredit his testimony; (3) in refusing to grant his motion for a mistrial because of the prosecutor's comments during final argument;[2] and (4) in instructing

---

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] The defendant's claim of improper argument is twofold: (1) that the prosecutor referred to facts contained only in the questions he asked of a witness for impeachment purposes based upon a prior written statement given by the witness to the police; and (2) that, without any evidence connecting

the jury on drawing inferences from circumstantial evidence. We find error only in the instruction on circumstantial evidence and, therefore, remand the case for a new trial. We review the other claims of the defendant to the extent that they are likely to arise on retrial.

Shortly after midnight on February 24, 1980, the defendant entered a Bridgeport barroom. In the bar, the defendant and the victim, John Matulionis, became involved in a verbal altercation that developed into a fight. In the course of the fight, the defendant fatally stabbed the victim. At trial the defendant, testifying in his own behalf, acknowledged that he had stabbed Matulionis, but claimed that he had done so in self-defense. See General Statutes § 53a-19.

I

The first two claims of error are related to the use of a prior written statement given to the police by a witness called to testify for the state. We conclude that there was no error in the state's cross-examination of the witness and that the defendant's request for an instruction limiting the use of a prior inconsistent statement to impeachment was properly denied.

the defendant to a car accident in which the witness was severely injured, the state had implied during cross-examination and argument that the witness had been intimidated by that incident and thus had decided not to remember facts contained in his prior statement.

In view of our conclusion in this case that a prior inconsistent statement may be used substantively and not only for the purpose of impeachment, it would not have been improper for the prosecutor to have referred to the facts contained in the statement as evidence. The statement, however, was never introduced into evidence and, therefore, references to its contents during argument were improper. Because we order a new trial as a result of the erroneous instruction upon circumstantial evidence, however, it is unnecessary for us to consider this claim further.

It was also improper for the prosecutor to suggest by innuendo, as he did during argument, that a car accident in which the witness was injured had effectively intimidated him from testifying truthfully. The trial court had previously indicated that any allusion to the cause of the car accident would be prejudicial. We do not anticipate that this issue will arise at the retrial we have ordered.

In an effort to establish that the defendant was indeed the aggressor, and thus to negate the claim that the killing was justified, the state called Louis Garassino, a patron who had been at the bar the night of the incident. He testified that he had arrived at the bar with a group of friends at about 7 p.m. and had remained there until after midnight when the stabbing occurred. When he was then asked to describe the stabbing incident, he claimed that he was unable to remember anything but that someone had been stabbed. He further claimed that he was unable to describe either of the individuals involved. The state then requested that the jury be excused from the courtroom. Outside the presence of the jury, Garassino was able to describe the two persons involved in the fight, but claimed to have no recollection of seeing the actual stabbing. In an attempt to refresh his recollection, Garassino was shown a written statement that he had given to the police soon after the incident. Although he acknowledged that he had made the statement and identified his signature thereon, he claimed that he "did not know" whether the statement refreshed his memory, because he had been intoxicated at the time and his memory of the event had deteriorated due to a recent automobile accident which had left him in a coma. He reiterated that the statement did not refresh his recollection except that he remembered the two participants were "Hells Angels" who reminded him of "Mutt and Jeff." He also stated that he was unable to vouch for the accuracy of the statement.[3]

Upon completion of the voir dire examination, the trial court concluded, after hearing argument on the matter, that Garassino was a hostile witness and

---

[3] Because the defendant was unable to vouch for the accuracy of the statement, it could not be admitted under the past recollection recorded exception to the hearsay rule, which this court has recognized. *Papas* v. *Aetna Ins. Co.*, 111 Conn. 415, 420, 150 A. 310 (1930).

allowed the state to cross-examine him concerning the detailed two page statement he had given to the police the night of the incident. The defendant duly excepted to the trial court's ruling. The jury was then summoned and the state proceeded to confront Garassino with each factual assertion contained in the prior statement concerning the details of the fight. As he had responded during the voir dire examination, the witness claimed he had no recollection of virtually every assertion in his prior statement.

The defendant's initial claim is that the court erred in declaring Garassino a hostile witness and, therefore, in allowing the state to cross-examine him regarding the prior out-of-court statement he had made to the police. This claim is based upon the common law rule which prohibits a party from impeaching his own witness, except where the party can establish the "hostility" of the witness or that he is "surprised" by the adverse testimony. *State* v. *McCarthy,* 197 Conn. 166, 177, 496 A.2d 190 (1985); *State* v. *Mitchell,* 169 Conn. 161, 164, 362 A.2d 808 (1975). The rationale behind the rule is that the party calling a witness vouches for the trustworthiness of the witness and is therefore bound by his testimony. McCormick, Evidence (3d Ed.) § 38. Recognizing that its basis has become generally eroded, we have recently abandoned this rule, and have held that a party may impeach his own witness without a showing of surprise, hostility or adversity. *State* v. *Graham,* 200 Conn. 9, 17, 509 A.2d 493 (1986); see *State* v. *Rivera,* 200 Conn. 44, 49, 509 A.2d 505 (1986); *State* v. *Jasper,* 200 Conn. 30, 34, 508 A.2d 1387 (1986). " 'Whatever validity the "voucher" rule may once have enjoyed . . . it bears little present relationship to the realities of the criminal process.' " *State* v. *Graham,* supra, 16, quoting *Chambers* v. *Mississippi,* 410 U.S. 284, 296, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). Because we have abrogated the common law restric-

tion on impeachment of a witness by the party who calls him to testify, the defendant cannot prevail on his claim that the trial court erred in declaring the witness hostile.

Although it was appropriate for the court to exercise its discretion and allow the state to cross-examine its own witness, the defendant also makes a related claim involving the jury's use of the prior statement of Garassino. The defendant filed a timely request to charge with the court; Practice Book § 852; seeking an instruction that the prior statement be considered solely with respect to the credibility of the witness, and not as probative of the facts it contained. The court failed to grant the request and the defendant also excepted to the charge as given. Although we recognize that "a request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given . . . ."; *Mazzucco* v. *Krall Coal & Oil Co.,* 172 Conn. 355, 357, 374 A.2d 1047 (1977); see *State* v. *Shindell,* 195 Conn. 128, 143, 486 A.2d 637 (1985); we conclude that the trial court properly refused to limit the jury's use of the prior statement solely to impeachment purposes.

Heretofore, this court has adhered to the traditional view that a prior inconsistent statement[4] of a non-

---

[4] The defendant also claims that the trial court erred in concluding that the prior statement of the witness was inconsistent with his testimony at trial. He bases this contention on the fact that the witness did not expressly contradict his prior statement, but merely claimed he had no recollection of certain facts within it. We are unpersuaded by this claim. Whether there are inconsistencies between the two statements is properly a matter for the trial court. *State* v. *Reed,* 174 Conn. 287, 302–303, 386 A.2d 243 (1978); *State* v. *Piskorski,* 177 Conn. 677, 710, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). Inconsistencies may be shown not only by contradictory statements but also by omissions. In determining whether an inconsistency exists, the testimony of a witness as a whole, or the whole impression or effect of what has been said, must be examined. *State* v. *Piskorski,* supra. "Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior

party[5] witness is inadmissible hearsay if offered to prove the truth of the matters asserted therein, and, therefore, is admissible only for impeachment purposes. *State* v. *Villafane,* 171 Conn. 644, 672, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977); *State* v. *Raffone,* 161 Conn. 117, 124, 285 A.2d 323 (1971); *Sears* v. *Curtis,* 147 Conn. 311, 315–17, 160 A.2d 742 (1960); Tait & LaPlante, Handbook of Connecticut Evidence § 7.24. The logic of this orthodox rule is that the prior inconsistent statement of a witness is too unreliable to be admitted as substantive evidence because the declarant was not (1) under oath and subject to punishment for perjury, (2) in the presence of the trier of fact, or (3) subject to cross-examination. See *State* v. *Saporen,* 205 Minn. 358, 361–63, 285 N.W. 898 (1939). This rule has been criticized by many legal scholars and commentators who maintain that the oath is not as strong a guaranty of trustworthiness as it once may have been, and that the requirements that the jury observe the declarant

---

statement . . . and the same principle governs the case of the forgetful witness." *People* v. *Green,* 3 Cal. 3d 981, 988, 479 P.2d 998, 92 Cal. Rptr. 494 (1971). A statement's inconsistency may be determined from the circumstances and is not limited to cases in which diametrically opposed assertions have been made. Thus, inconsistencies may be found in changes in position and they may also be found in denial of recollection. See 3 Weinstein, Evidence (1985) § 607 (6). The trial court has considerable discretion to determine whether evasive answers are inconsistent with prior statements. *United States* v. *Rogers,* 549 F.2d 490 (1976); *State* v. *Harris,* 182 Conn. 220, 226, 438 A.2d 38 (1980). In this case, Garassino had given a sworn statement to the police concerning the incident, and yet, while testifying at trial, was unable to recall the specific details of the fight. Considering the selective memory loss of the witness, there was sufficient evidence from which the trial court could properly conclude that he, in fact, remembered the substance of the statements. See *Watkins* v. *State,* 446 N.E.2d 949 (Ind. 1983).

[5] The prior inconsistent statement of a party who is a witness in a proceeding has long been admissible as substantive evidence against that party. See *O'Brien* v. *John Hancock Mutual Life Ins. Co.,* 143 Conn. 25, 29–30, 119 A.2d 329 (1955); Tait & LaPlante, Handbook of Connecticut Evidence § 11.5; McCormick, Evidence (3d Ed. 1984) § 251.

and that the defendant have the opportunity to cross-examine are met where the declarant takes the stand and is subject to cross-examination. See, e.g., McCormick, Evidence (3d Ed. 1984) § 251; 3A Wigmore, Evidence (Chadbourn Rev. 1970) § 1018; Graham, "Employing Inconsistent Statements for Impeachment and as Substantive Evidence," 75 Mich. L. Rev. 1565 (1977).

The commentators note that when the declarant is available for cross-examination the jury has the opportunity to observe him as he repudiates or varies his former statement. The cross-examination to which a recanting witness will be subjected is likely to be meaningful because the witness will be forced either to explain the discrepancies between the earlier statements and his present testimony, or to deny that the earlier statement was made at all. "If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court." *DiCarlo* v. *United States,* 6 F.2d 364, 368 (2d Cir. 1925); see *United States* v. *Insana,* 423 F.2d 1165 (2d Cir. 1970); *United States* v. *De Sisto,* 329 F.2d 929 (2d Cir. 1964). The jury can, therefore, determine whether to believe the present testimony, the prior statement, or neither. Moreover, prior statements are, necessarily, made closer to the event in question, when memories are fresher and when there is less likelihood that the statement is the product of corruption, false suggestion, intimidation or appeals to sympathy. See Morgan, "Hearsay Dangers and the Application of the Hearsay Concept," 62 Harv. L. Rev. 177, 192 (1948). Quite simply, when the declarant is in court, under oath, and subject to cross-examination before the factfinder concerning both his out-of-court and in-court statements, "the usual dangers of hear-

say are largely nonexistent . . . ." *California* v. *Green,* 399 U.S. 149, 155 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970).[6]

Largely on the basis of this criticism, a growing number of jurisdictions have abandoned the common law rule and now allow prior inconsistent statements as substantive evidence where the declarant takes the stand and is subject to cross-examination. See *Beavers* v. *State,* 492 P.2d 88 (Alaska 1971); *State* v. *Skinner,* 110 Ariz. 135, 515 P.2d 880 (1973); *People* v. *Freeman,* 20 Cal. App. 3d 488, 97 Cal Rptr. 717 (1971); *Gibbons* v. *State,* 248 Ga. 858, 286 S.E.2d 717 (1982); *Watkins* v. *State,* 446 N.E.2d 949 (Ind. 1983); *State* v. *Lott,* 207 Kan. 602, 485 P.2d 1314 (1971); *Nugent* v. *Commonwealth,* 639 S.W.2d 761 (Ky. 1982); *State* v. *Provet,* 133 N.J. Super. 432, 337 A.2d 374 (1975); *State* v. *Igoe,* 206 N.W.2d 291 (N.D. 1973); *Commonwealth* v. *Brady,* 510 Pa. 123, 507 A.2d 66 (1986); *State* v. *Copeland,* 278 S.C. 572, 300 S.E.2d 63 (1982), cert. denied, 460 U.S. 1103, 103 S. Ct. 1802, 76 L. Ed. 2d 367, reh. denied, 462 U.S. 1124, 103 S. Ct. 3099, 77 L. Ed. 2d 1357 (1983); *Vogel* v. *State,* 96 Wis. 2d 372, 291 N.W.2d 838 (1980); see generally annot., 30 A.L.R.4th 414 (1984). The orthodox viewpoint " 'serves only to keep relevant and reliable evidence from the jury. Its result serves no greater principle than judicial inertia . . . a trial is, fundamentally, a search for an objective account of the events upon which criminal charges are based. An evidentiary rule which forces the searcher to ignore relevant clues whose reliability can be tested by cross-examination serves no purpose.' " *Commonwealth* v. *Brady,* supra, 131, quoting *Commonwealth* v. *Gee,* 467 Pa. 123, 146, 354 A.2d 875 (1976) (Roberts, J., dissenting).

---

[6] We note that because of these circumstances the United States Supreme Court has held that admission of a prior inconsistent statement for substantive purposes does not violate the confrontation clause. *California* v. *Green,* 399 U.S. 149, 165, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970).

In light of these considerations, we are persuaded that the prevailing reasons for refusing to allow any prior inconsistent statement to be used as substantive evidence are no longer valid. We believe an exception to the hearsay rule is necessary to allow the trial court to admit for substantive purposes prior inconsistent statements given under prescribed circumstances reasonably assuring reliability. This court has previously adopted exceptions to the hearsay rule " ' "where the statements are made under conditions deemed to render them equal in reliability and trustworthiness" to those made under "the sanction of an oath and the test of cross-examination." '*Cherniske* v. *Jajer,* 171 Conn. 372, 376–77, 370 A.2d 981 (1976); *General Motors Acceptance Corporation* v. *Capitol Garage, Inc.,* 154 Conn. 593, 597, 227 A.2d 548 (1967)." *State* v. *McClendon,* 199 Conn. 5, 10, 505 A.2d 685 (1986). Although we are impressed by the logic of the modern view favoring substantive admissibility for all prior inconsistent statements where the defendant is in court and subject to cross-examination, we are unwilling to abrogate, without adequate precautions, the traditional view prohibiting their substantive use. While the signed out-of-court statement in this case was made under sufficiently reliable circumstances, some out-of-court declarations lacking similar safeguards of reliability and accuracy must continue to be governed by the hearsay rule.

Substantive admissibility of prior oral statements[7] presents a hazard of error in reporting and increases

[7] We are aware that the United States Supreme Court has refused "to distinguish among prior inconsistent statements on the basis of the circumstances under which the prior statements were given. The subsequent opportunity for cross-examination at trial with respect to both the present and past versions of the event, is adequate to make equally admissible, as far as the Confrontation Clause is concerned, both the casual, off-hand remark to a stranger, and the carefully recorded testimony at a prior hearing." *California* v. *Green,* 399 U.S. 149, 168, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970). We distinguish the casual remark because of our concerns for the reliability of the statements, and do not rely upon a constitutional analysis.

the temptation and opportunity for fabrication and distortion by witnesses called to report them. McCormick, "The Turncoat Witness: Previous Statement as Substantive Evidence," 25 Tex. L. Rev. 573, 586–88 (1947). The trier of fact, thus, has a difficult task in determining whether to believe the present testimony of the declarant, or his prior out-of-court statement as related by another witness. Rather than entrust that responsibility solely to the trier of fact we choose to limit substantive admissibility of prior inconsistent statements to situations where the likelihood of fabrication is slight and the risk of coercion, influence or deception is greatly reduced. Graham, supra, 1582. Further, blanket admissibility of prior inconsistent statements would also permit the substantive use of oral statements made in jest or to boast of knowledge of criminal activity in which the declarant was not actually involved. Such oral statements, especially when other persuasive circumstantial evidence of guilt exists, would be inordinately difficult for the declarant to explain and might be critical in convincing the trier of the defendant's guilt.

We, therefore, adopt today a rule allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination.[8] The hazard of error is greatly lessened with respect to prior incon-

---

[8] We note that in three recent opinions this court decided that although a party may impeach his own witness, he may not introduce evidence of a prior inconsistent statement under the guise of impeachment in the hope that the jury will consider the statement substantively. *State* v. *Rivera,* 200 Conn. 44, 49, 509 A.2d 505 (1986); *State* v. *Jasper,* 200 Conn. 30, 34, 508 A.2d 1387 (1986); *State* v. *Graham,* 200 Conn. 9, 18, 509 A.2d 493 (1986). We depart from this aspect of those cases, in order to permit only prior written inconsistent statements signed by the declarant to be used for substantive purposes. The rule prohibiting the introduction of prior inconsistent statements under the guise of impeachment in the hope that the jury will use the evidence substantively will still, however, apply to prior oral statements.

sistent written statements signed by the declarant. Errors in transcription are rare and methods of detecting and establishing forgery or alteration are widely available. McCormick, supra, p. 588. Prior oral statements of a witness, easily manufactured and often difficult to rebut, should not be used to prove an element of a crime essential to guilt. Although the requirement that prior statements be written and signed by the declarant[9] is not an absolute guaranty of reliability, it does provide significant assurance of an accurate rendition of the statement and that the declarant realized it would be relied upon.[10]

After the incident which resulted in the death of the victim, Garassino gave a statement to the police, indicating that the defendant was the aggressor and instigator of the fight and that he had actually seen the defendant stab the victim. Garassino gave this statement voluntarily based upon his personal observations of the event and he signed it. The statement was given soon after the incident and long before the witness' memory might have faded. This statement, given to a police officer, had the added assurance of reliability that, if untrue, Garassino faced prosecution for falsely reporting an incident to the police; General Statutes

[9] Although we are not presented with such a situation here, we note that prior tape recorded statements possess similar indicia of reliability and trustworthiness to allow their substantive admissibility as well. See *Commonwealth* v. *Brady,* 510 Pa. 123, 133, 507 A.2d 66 (1986).

[10] Because of congressional concerns for reliability and trustworthiness of prior statements, rule 801 (d) (1) (A) of the Federal Rules of Evidence has only partially abolished the common law prohibition against their substantive use, providing that a prior statement is not hearsay if the declarant testifies at trial, is subject to cross-examination concerning the statement and the statement was given under oath at a trial, hearing, other proceeding or in a deposition. Thus, under the rule as enacted, a party may introduce a prior inconsistent statement as substantive evidence only if it was originally made in testimonial form. Although we have similar concern over the untrustworthiness of some prior inconsistent statements, we believe that it is unnecessary to limit substantive admissibility to only those statements made in a formal adversarial setting.

§ 53a-180; *State* v. *Altrui,* 188 Conn. 161, 175, 448 A.2d 837 (1982); and, because the statement was also sworn, for giving a false statement to the police. General Statutes § 53a-157. The declarant testified at trial and was extensively examined by both the state and defense counsel concerning the discrepancies between the prior statement and his in-court testimony. The jury had an adequate opportunity to observe and examine the demeanor of the witness, to hear the testimony and to assess his credibility. The trial court did not err in refusing to instruct the jury that the prior statement could be used only to impeach the credibility of Garassino.

## II

The dispositive issue in this appeal, raised in the defendant's supplemental brief, involves the trial court's instruction to the jurors that they could draw inferences from circumstantial evidence if "the inference asked to be drawn is not only logical and reasonable but is strong enough that you can find *that it is more probable than not that the fact to be inferred is true.*" (Emphasis added.)[11] The defendant contends that this charge unconstitutionally diluted the state's burden of proving the essential elements of the crime beyond a reasonable doubt. We agree.

Initially, we note that the defendant's failure to except to this portion of the charge ordinarily would

[11] The entire charge on circumstantial evidence was as follows: "Proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact. You may apply the rule of circumstantial evidence. This rule involves the offering of evidence of facts from which you are asked to infer the existence of another fact or set of facts. Such an inference may be made provided two elements in the application of this rule are satisfied: That the inference asked to be drawn is not only logical and reasonable but is strong enough so that you can find that it is more probable than not that the fact to be inferred is true—that the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt. It is your right to draw inferences if you conclude that the facts you find proven reasonably establish other facts by reason and logic and are not the result of speculation, surmise or guesswork."

render the claim of error unreviewable on appeal. Practice Book §§ 854, 3063. As we repeatedly have said, in the absence of a timely exception, this court will not address a claim of error unless it falls within the "exceptional circumstances" doctrine of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), where the defendant can demonstrate the deprivation of a fundamental constitutional right and a fair trial. *State* v. *Preyer,* 198 Conn. 190, 196–97, 502 A.2d 858 (1985). The defendant's claim qualifies for *Evans* review because it implicates the fundamental constitutional right that the state establish his guilt beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Further, the claim is basically similar to the kind of burden shifting claim on the element of intent; *Sandstrom* v. *Montana,* 442 U.S. 510, 524, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); that we have found reviewable in the absence of an exception at trial in numerous instances. *State* v. *Williams,* 199 Conn. 30, 33, 505 A.2d 699 (1986); *State* v. *Amarillo,* 198 Conn. 285, 299 n.9, 503 A.2d 146 (1986); see *State* v. *Farrar,* 7 Conn. App. 149, 153 n.3, 508 A.2d 49 (1986).

We have had two occasions to examine "more probable than not" instructions on circumstantial evidence similar to those challenged in this case. In *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986), we concluded that it was not "reasonably possible that the jury was misled by the alleged errors in the court's instructions." Despite the challenged language, we reasoned that the trial court's repeated references to the burden of proof "made abundantly clear to the jury that the burden of proof as to every element of the offenses charged was on the state, and that this burden had to be satisfied beyond a reasonable doubt." Id. In *State* v. *Rodgers,* 198 Conn. 53, 56–59, 502 A.2d 360 (1985), we concluded that a similar

instruction impermissibly diluted the requirement that the state establish guilt beyond a reasonable doubt[12] and held that "it cannot be said that the incorrect statement did not influence the jury."

In order to address the defendant's claim in this case, it is necessary to reconcile these two decisions. The Appellate Court recently had occasion to do just this in *State* v. *Farrar,* supra, 155, where it noted that the principal distinction between the two cases is that intent was a disputed issue in *Rodgers* but not in *Reddick.* The court reasoned that "[w]here the principal factual issue is intent, which is characteristically proven by circumstantial evidence; see *State* v. *Chace,* 199 Conn. 102, 105, 505 A.2d 712 (1986); the court's instructions regarding the use of circumstantial evidence as proof of this essential element are subject to close scrutiny." *State* v. *Farrar,* supra, 155. Alternatively, the court analyzed, "where . . . the principal factual issue is identity, which is not classically dependent upon circumstantial evidence for its proof, the trial court's instructions may be read as a whole to determine whether it is reasonably possible that the jury was misled by an erroneous explanation regarding the use of circumstantial evidence." Id., 155–56.

Adopting the foregoing analysis, we must resolve the defendant's claim in his favor. As in *Rodgers,* "[t]he present case particularly called for a correct instruction on the meaning and utilization of circumstantial evidence in a criminal case." *State* v. *Rodgers,* supra, 59. The primary issues before the jury in this case were

---

[12] We note that in *State* v. *Rodgers,* 198 Conn. 53, 58 n.2, 502 A.2d 360 (1985), the court had twice given the challenged instructions to the jury, once during its general instructions on burden of proof, and again during its specific instructions on the elements of the crime. Although the challenged instruction was only given once in the present case, we see no significant distinction between the two cases. *Rodgers* was not decided based upon the number of improper instructions, but solely on the erroneous instruction to the jury on a principal issue in the case.

whether the defendant intended to cause the death of the victim and whether the killing was justified by self-defense. The state argued zealously that the circumstances surrounding the victim's death indicated that the defendant intended to kill the victim and did not support the defendant's claim that the killing was undertaken in self-defense. The state also asserted that the number and severity of the stab wounds were indicative of the defendant's intent. The court instructed the jury that the only way to determine intent was to infer it from the facts and that all inferences must be reasonable and logical. Having been told that an inference may be drawn when "it is more probable than not that the fact to be inferred is true," the jury was, thus, permitted to draw the inference of intent, necessary to a finding of guilty, based on the erroneous probability standard. Although the court did instruct the jury on several occasions that intent must be proven beyond a reasonable doubt, it did not rectify the erroneous charge on circumstantial evidence. Because the focus of the case was intent, we conclude that it was reasonably possible that the jury was misled with respect to the state's burden of proving intent beyond a reasonable doubt.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other justices concurred.