[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, a sentenced prisoner, has filed a petition for a writ of habeas corpus challenging his confinement on the grounds of ineffective assistance of counsel. On February 23, 2000, the court conducted an evidentiary hearing on this petition during which the court heard testimony from the petitioner and his trial counsel, Attorney Carol Goldberg, and received documentary evidence, including the transcript of the petitioner's trial. For the following reasons, the petitioner's request for a writ of habeas corpus is denied. CT Page 5910
On May 26, 1993, the petitioner was convicted after a jury trial of murder in violation of General Statutes § 53a-54a. He was sentenced to forty-five years in prison. The petitioner's conviction was subsequently upheld on appeal. State v. Newsome, 238 Conn. 588 (1996).
The Supreme Court determined that the jury could have reasonably found the following facts. "At approximately 10:30 p.m. on March 4, 1992, Bridgeport police officer David Daniels heard two gunshots fired in the area of 455 Trumbull Avenue in Bridgeport. When Daniels responded to the location where he believed the shots had been fired, he saw a car leave the area and discovered the victim, Lance Surrency, lying in the grass in front of 385 Trumbull Avenue. The victim had been shot in the face and was unresponsive. He died shortly thereafter.
"The following day, the police questioned Rodney Womble about the shooting. In a signed, sworn statement, Womble identified the [petitioner] as the person who had shot the victim. Womble told the police that on the previous evening he had observed a fight between the victim and several other men, including the [petitioner], while they were standing near a `food bus' in a parking lot of the Trumbull Gardens Housing Complex. Womble stated that the [petitioner] had poured beer on the victim to provoke him to fight and had then taken out a gun and shot the victim. He further stated that immediately after the shooting, the [petitioner] had entered a car parked nearby and had driven away.
"The [petitioner] was subsequently arrested and charged with the victim's murder. At both the probable cause hearing and at trial, Womble testified that although he had witnessed the shooting, he had not been able to identify the person who had shot the victim. Womble admitted that he had told the police that the [petitioner] was the shooter, but claimed that he had only heard rumors that the [petitioner] had shot the victim and had given the [petitioner]'s name to the police in order to leave the police station as quickly as possible. At the probable cause hearing, the state introduced the portion of Womble's prior statement to the police in which he described the shooting. The segment of the statement was offered for substantive purposes pursuant to State v.Whelan, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994,107 S.Ct. 597, 93 LEd.2d 598 (1986). The trial court found probable cause to believe that the [petitioner] had murdered the victim. At trial, the state introduced Womble's entire statement, with some redactions, for substantive purposes pursuant to Whelan. Womble's statement provided the only identification evidence against the [petitioner]. The jury found the [petitioner] guilty of murder." State v. Newsome, supra,238 Conn. 590-591. CT Page 5911
The law governing the petitioner's claims of ineffective assistance of counsel at trial is well established. The right to effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution and article first, § 8, of the Connecticut constitution. Copas v. Commissioner of Correction, 234 Conn. 139, 153
(1995). The seminal case outlining the precise parameters of the right to effective assistance of counsel is Strickland v. Washington, 466 U.S. 668
(1984). In Strickland, the United States Supreme Court established a two-part test for determining whether a criminal defendant has been deprived of his constitutional right to effective assistance of counsel: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687.
With respect to the first prong, the issue is whether counsel's assistance was reasonable considering all the circumstances. Id., 688. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id., 690.
With respect to the second prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694.
In this case, the petitioner asserts that he was deprived of his right to effective assistance of counsel at trial for the following reasons:[1]
(1) his attorney failed to appropriately cross-examine the state's witnesses; (2) his attorney failed to present a particular witness on CT Page 5912 his behalf; (3) his attorney failed to appropriately test the victim's clothing; and (4) his attorney failed to argue to the jury that Rodney Womble shot the victim. Each of these claims is without merit.
The petitioner asserts that Attorney Goldberg unreasonably failed to cross-examine the state's witnesses. First, the petitioner claims that she failed to properly cross-examine Jared Fleming as to his knowledge of who shot the victim. Fleming testified at trial that he had a fight with the victim earlier on the day of March 4, 1992, but that he was in his house at the time of the shooting and that he did not see who shot the victim. Attorney Goldberg briefly cross-examined Fleming to reaffirm that he did not know who shot the victim. Attorney Goldberg testified at the habeas hearing that her cross-examination of Fleming was brief because his testimony did not harm the petitioner's case. Fleming could not identify the petitioner or anyone else as the shooter. The petitioner claims that Fleming was involved in a fight with the victim and therefore must know identity of the person who shot him. The petitioner offers no evidence to support this supposition. Attorney Goldberg's cross-examination of Fleming was reasonable in light of the circumstances.
The petitioner also claims that Attorney Goldberg failed to properly cross-examine Womble with respect to the assertion in his written statement that the gunshot "sounded like a .38." The petitioner asserts that Womble could not determine the caliber of the weapon from its sound and that Attorney Goldberg should have disclosed this fact on cross-examination. Womble however did not definitively identify the sound as that of a .38 caliber handgun. In his written statement, he stated, "I really couldn't make out what kind it was but it sounded like a .38." On direct examination at trial, Womble stated that he did not know what type of gun was used but "it sounded like a thirty-eight, I don't know for sure what kind it was." Cross examination showing the difficulty of identifying the caliber of a gun by its sound was not necessary since Womble admitted that he was uncertain as to the gun's caliber. Moreover, the petitioner does not dispute that the victim was shot with a .38 caliber bullet. As a result, it is unclear what advantage the petitioner would have gained by cross-examination on this issue. Finally, Attorney Goldberg spent considerable time cross-examining Womble to show that he presently disavowed his prior identification of the petitioner and that he was now telling the truth in court when stating that he did not see the petitioner present at the murder scene and he could not identify the petitioner as the person who shot the victim. Given this testimony, it was reasonable for Attorney Goldberg to conclude that it was not in the petitioner's interest to undermine Womble's credibility on other issues. CT Page 5913
The petitioner also contends that Attorney Goldberg improperly failed call Keith Bland as a witness on his behalf at trial. The petitioner claims that Bland would have testified that Womble told him that he never actually saw the shooting take place and that he never saw the shooter. The petitioner testified at the habeas hearing that he told Attorney Goldberg that she should speak with Keith Bland. Attorney Goldberg testified at the habeas hearing that she was never told by the petitioner to interview Bland and that she had never heard the name before. The court finds Attorney Goldberg to be more credible on this issue and finds that she had no knowledge that Bland was a potential witness on this issue. Moreover, even assuming that Attorney Goldberg knew of Bland, there is not a reasonable probability that the result of the proceeding would have been different had he testified. Womble testified at trial that he could not identify the shooter. The defense did not need Bland to impeach Womble's Whelan statement; Womble himself repudiated it.
The petitioner further claims that his attorney failed to properly test the victim's clothing. Womble stated in his written statement that the petitioner had poured beer on the victim to entice him to fight prior to the shooting. The petitioner argues that the failure to have the victim's clothing tested to determine whether beer was present deprived him of the effective assistance of counsel. Implicit in the petitioner's argument is the claim that a test would determine that no beer was present, thereby undermining the credibility of Womble's written statement. As stated previously, Attorney Goldberg did an effective job on cross-examination showing that Womble disavowed his written statement. During cross-examination at trial, Womble stated that he did not see the petitioner at the murder scene, that he did not see who shot the victim, that he could not identify the petitioner as the person who shot the victim, that he identified the petitioner as the shooter because he had heard rumors to that effect and that he gave the police the written statement because he believed it was what they wanted to hear and he was afraid he would be arrested if he did not. The impeachment of Womble's statement that the petitioner first poured beer on the victim pales in comparison to these contradictions and to Womble's repudiation of his identification of the petitioner as the shooter. The petitioner has not shown that the failure to test the victim's clothes prejudiced the defense and that there is a reasonable probability that the result of the trial would have been different had Womble been impeached on his statement as to the beer.
Finally, the petitioner claims that his attorney inappropriately failed to argue to the jury that Womble was the person who shot the victim. Attorney Goldberg testified at the habeas hearing that she did not argue that Womble shot the victim because there was no evidence CT Page 5914 establishing that claim. "It is well established that a defendant has a right to introduce evidence that another person committed the offense with which the defendant is charged. Third party suspect evidence is admissible if it directly connects the third party to the crime. It is not enough however to show that another had the motive to commit the crime nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused." (Citations omitted; internal quotation marks omitted.) State v. Sauris,227 Conn. 389, 401 (1993). No evidence was offered at trial directly connecting Womble to the murder and none was offered by the petitioner at the habeas hearing before this court. The only evidence even remotely linking Womble to the crime is his written testimony that he witnessed the murder. The petitioner's naked speculation that Womble was involved was insufficient to enable Attorney Goldberg to argue that Womble was culpable for the crime.
The petitioner has failed to show that the performance of his trial attorney was deficient or that it prejudiced his defense. Accordingly, the relief requested is denied and the petition is dismissed.
BY THE COURT
Judge Jon M. Alander