******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSUE RODRIGUEZ *v.* COMMISSIONER
OF CORRECTION
(AC 35929)

Beach, Sheldon and Gruendel, Js.

*Argued May 9—officially released July 26, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*David V. DeRosa*, assigned counsel, for the appellant (petitioner).

*Lisa Herskowitz*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Kelly A. Masi*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

GRUENDEL, J. The petitioner, Josue Rodriguez, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. He claims that the court improperly concluded that he had not demonstrated that his trial counsel rendered ineffective assistance with respect to (1) his *Alford*[1] plea and (2) his counsel's alleged conflict of interest. We affirm the judgment of the habeas court.

The relevant facts are as follows. "In 2005, the [petitioner] was convicted of sale of narcotics in violation of General Statutes § 21a-277 (a), and sentenced to twelve years incarceration, execution suspended, with five years probation. As a condition of the [petitioner's] probation, he was not to violate the criminal laws of the state. In 2007, the [petitioner] was convicted of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and burglary in the third degree in violation of General Statutes § 53a-103. He was sentenced to a total effective term of ten years incarceration, execution suspended, and five years probation. The [petitioner] also was found in violation of his probation imposed in 2005, as a result of those offenses. His probation was not revoked, but, rather, it was to run concurrently with the probationary term imposed for the conviction. The conditions of his probation included, inter alia, no contact with the victim, Damaris Sanchez, and a 'zero tolerance' provision for any violations.

"In the early morning hours on November 14, 2008, Sanchez, the [petitioner's] former wife with whom he had an 'on and off' relationship, was asleep in her home when she awoke to the smell of gasoline fumes. When she looked outside the house, she saw a shadowy human figure walk near the front of her house. When she saw the person's face, she recognized the person as the [petitioner]. She saw the [petitioner] light a lighter near the hood of her car, and she yelled to him, 'what are you doing to my car.' The [petitioner] ran away. Once outside, Sanchez noticed that the [petitioner] had vandalized her house and car with obscene words and phrases.

"On April 13, 2009, the court found that the [petitioner] violated his probation by committing criminal mischief and violating the no contact order. The court revoked his probation and sentenced him to serve the entire twelve years of his original 2005 sentence." *State* v. *Rodriguez*, 130 Conn. App. 645, 646–47, 23 A.3d 826 (2011), aff'd, 320 Conn. 694, 132 A.3d 731 (2016). That same day, the petitioner "appeared before another judge on the underlying criminal charges and pleaded guilty, pursuant to the *Alford* doctrine, to attempt to commit arson in the second degree in violation of General Statutes §§ 53a-112 and 53a-49. The [petitioner] was thereafter sentenced to eight years incarceration, con-

current to the twelve year sentence imposed for violating probation." (Footnote omitted.) Id., 648–49.

"The [petitioner] filed a timely appeal from the judgment of the trial court finding him in violation of his 2005 probation, contending, among other things, that there was insufficient evidence for the court to find by a preponderance of the evidence that he had violated the terms of his probation. . . . The [petitioner], however, did not take a timely appeal challenging his guilty plea to the charge of attempt to commit arson." (Citation omitted.) *State* v. *Rodriguez*, 320 Conn. 694, 697, 132 A.3d 731 (2016). On appeal, this court dismissed as moot the petitioner's challenge to the finding that he violated the terms of his probation. *State* v. *Rodriguez*, supra, 130 Conn. App. 649. Our Supreme Court thereafter affirmed the propriety of that determination. *State* v. *Rodriguez*, supra, 320 Conn. 706.

Apart from his violation of probation appeal, the petitioner, on July 30, 2009, filed a petition for a writ of habeas corpus, claiming that Attorney William Gerace, who represented him at both of the April 13, 2009 hearings, had rendered ineffective assistance of counsel. In the first count of his amended petition, the petitioner alleged that Gerace had simultaneously represented him and Sanchez in 2005, thereby giving rise to a conflict of interest. The second count of that petition alleged, inter alia, that Gerace "failed to advise the petitioner that a plea [to attempt to commit arson in the second degree] would invalidate any appeal" of his violation of probation conviction.

Following a trial, the habeas court denied his petition, finding that the petitioner did not satisfy his burden with respect to the claims contained therein. The court subsequently granted the petition for certification to appeal, and this appeal followed.

Before considering the specific claims advanced by the petitioner in this appeal, we first note the standard of review that governs allegations of ineffective assistance of counsel. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 76–77, 967 A.2d 41 (2009).

"A criminal defendant's right to the effective assistance of counsel extends through the first appeal of right and is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution." *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555

U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). "In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense [by establishing a reasonable probability that, but for the counsel's mistakes, the result of the proceeding would have been different]. . . . Furthermore, [i]n a habeas corpus proceeding, the petitioner's burden . . . is not met by speculation . . . *but by demonstrable realities*." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Farnum* v. *Commissioner of Correction*, 118 Conn. App. 670, 675, 984 A.2d 1126 (2009), cert. denied, 295 Conn. 905, 989 A.2d 119 (2010). "[A] successful petitioner must satisfy both prongs . . . [and the] failure to satisfy either . . . is fatal to a habeas petition." (Internal quotation marks omitted.) *Saucier* v. *Commissioner of Correction*, 139 Conn. App. 644, 650, 57 A.3d 399 (2012), cert. denied, 308 Conn. 907, 61 A.3d 530 (2013).

I

The petitioner first claims that his trial counsel rendered ineffective assistance in failing to advise him that his *Alford* plea to attempt to commit arson in the second degree would foreclose "any viable appeal" of his violation of probation conviction. In rejecting that claim, the court concluded that the petitioner had failed to demonstrate any prejudice resulting therefrom. We agree.

As our Supreme Court has explained, "under the test in *Hill* [v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)], in which the United States Supreme Court modified the prejudice prong of [*Strickland*] for claims of ineffective assistance when the conviction resulted from a guilty plea, the evidence must demonstrate that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 598, 940 A.2d 789 (2008). That standard governs the petitioner's claim.

The record reflects that, pursuant to his *Alford* plea, the petitioner received a sentence of eight years incarceration on the attempted arson charge, which sentence ran concurrently with his twelve year sentence for violation of probation. In its memorandum of decision, the habeas court noted that, at the time that plea was entered, the trial court "canvassed the *Alford* plea and twice specifically asked the petitioner if he was pleading guilty because of the favorable plea agreement. Both

times the petitioner acknowledged that the favorable disposition was his motivation for [entering] the *Alford* plea."[2] See *State* v. *Reid*, 277 Conn. 764, 784, 894 A.2d 963 (2006) (court may rely on responses made during plea canvass); *Toles* v. *Commissioner of Correction*, 113 Conn. App. 717, 727, 967 A.2d 576 (in evaluating ineffective assistance of counsel claim, habeas court entitled to rely on petitioner's responses to trial court during plea canvass), cert. denied, 293 Conn. 906, 978 A.2d 1114 (2009).

At the habeas trial, the petitioner presented only two witnesses—Sanchez and himself. Sanchez offered no testimony with respect to this claim. In his testimony, the petitioner acknowledged that "what convinced [him] to take the plea" was the risk of being sentenced to additional years of incarceration.[3] Although the petitioner also alleged that he informed the trial court at the time of sentencing that he wanted a trial, that testimony is belied by the transcript of the April 13, 2009 plea proceeding, which was admitted into evidence at his habeas trial. That transcript contains no indication by the petitioner that he wished to proceed to trial on the attempted arson charge.[4] In addition, the petitioner never testified at his habeas trial that, had he been advised that his *Alford* plea would preclude an appeal of his violation of probation conviction, he would not have pleaded guilty and would have insisted on going to trial.

In view of the evidence presented at the habeas trial, the court concluded that it "remains unpersuaded that the petitioner would have refused to plead guilty and reject a completely concurrent sentence in the arson case even if he was aware of the loss of opportunity to challenge [the court's] finding of his violation of probation. . . . [T]he court finds that the petitioner would have taken advantage of the very favorable sentence recommendation of an entirely concurrent eight year prison sentence even if . . . Gerace had expended more time discussing the offer with [him]. The bottom line is that the petitioner would have concluded that the concurrent sentence recommendation was too attractive to pass up." On the record before us, we cannot quarrel with that determination. Accordingly, the petitioner's claim fails.

## II

The petitioner also claims that his trial counsel rendered ineffective assistance attributable to a conflict of interest on his part. We do not agree.

"It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . As an adjunct to this right, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest." (Citation omitted; internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*,

312 Conn. 345, 352, 92 A.3d 944 (2014). The legal standard applicable to such claims hinges on whether an appellant is alleging an actual conflict of interest on the part of counsel.

"Where the criminal defendant presents a claim of actual ineffectiveness . . . that is, when he challenges his lawyer's performance in the trial court, he must show that: (1) his counsel's performance was deficient in the sense that the counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) the deficient performance prejudiced the defense . . . in the sense that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . . In such a case, therefore, the defendant must establish (1) deficient performance, and (2) actual prejudice." (Citations omitted; internal quotation marks omitted.) *Phillips* v. *Warden*, 220 Conn. 112, 132, 595 A.2d 1356 (1991).

By contrast, "[w]here . . . the defendant claims that his counsel was burdened by an actual conflict of interest . . . the defendant need not establish actual prejudice. . . . Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. . . . In a case of a claimed conflict of interest, therefore, in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Citations omitted; internal quotation marks omitted.) Id., 132–33.

The following additional facts are relevant to the petitioner's conflict of interest claim. The petitioner is a convicted felon with a history of domestic violence. At the time that he entered his *Alford* plea, the petitioner had known Gerace for almost twenty years. The petitioner was approximately sixteen years old when he first retained Gerace as his criminal defense counsel; he was thirty-four years old at the time of his *Alford* plea to attempt to commit arson in the second degree.

In 2005, Sanchez was arrested following a domestic altercation involving "one of [the petitioner's] mistresses." At that time, Sanchez was married to the petitioner, who was represented by Gerace in a pending criminal matter. Sanchez testified that she had "found out about" Gerace from the petitioner and that she never paid Gerace any money. She never met with Gerace alone and never provided him any personal information, such as medical records. Sanchez explained that she never met with Gerace outside of a courthouse, but rather had met with him "inside court when he was

dealing with my case only." She also "never spoke" with Gerace about the petitioner's cases. Sanchez testified that her domestic case ultimately was nolled.

In 2006, the petitioner was arrested following a domestic altercation involving Sanchez and her son. Gerace, who represented the petitioner in that criminal matter, did not ask Sanchez to waive any attorney-client privilege. At his habeas trial, the petitioner conceded that he did not raise any conflict of interest claim at that time. The petitioner further acknowledged that Gerace "got [him] a pretty good deal on that case, all suspended time . . . ."

In 2008, the petitioner was arrested in the arson case involving Sanchez that gave rise to his *Alford* plea. Gerace once again represented the petitioner and did not ask Sanchez to waive any attorney-client privilege at that time. Sanchez subsequently testified at the petitioner's violation of probation hearing. As the habeas court found in its memorandum of decision, "Sanchez testified reluctantly for the state. She acknowledged on direct examination a desire to help the petitioner in that legal predicament. She undercut her own earlier identification of the petitioner as the arsonist to the police by attributing that identification to 'bad nerves,' poor eyesight, and a weak memory. Her uncertainty on the stand at the [violation of probation] hearing reached such a level that the prosecution was able to admit her previous statement to the police under *State* v. *Whelan*, 200 Conn. 743, 753–54, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).[5] On cross examination . . . Gerace capably elicited that Sanchez only 'imagined' the odor of gasoline inside her home on the night of the incident, that she was 'delusional' that night, that her vision was bad, and that her powers of observation were clouded by the ingestion of Vicodin for back pain. . . . Gerace also proffered evidence through [Sanchez] that her brother and her boyfriend also were present during the activities in question, and available to testify, even though the prosecutor failed to call them as witnesses for the state. This latter testimony by Sanchez was inconsistent with her police statement." As a result, the trial court in that proceeding "characterized . . . Sanchez' testimony as evasive, noncommittal, and contradictory to her previous statement to the police. In arriving at a decision that the petitioner committed the crimes in violation of his probation, [the trial court] relied on the *Whelan* statement rather than . . . Sanchez' testimony." Those findings all are supported by the record before us.

On appeal, the petitioner maintains that Gerace was burdened by an actual conflict of interest stemming from his representation of Sanchez in 2005. He claims that said representation adversely affected Gerace's performance at the violation of probation hearing. Specifically, he alleges that Gerace refrained from cross-

examining Sanchez about certain mental health issues due to the existence of an attorney-client privilege between them.

The fallacy in that claim is the presumption that Sanchez communicated privileged information to Gerace. The petitioner did not call Gerace as a witness at his habeas trial. Moreover, Sanchez testified at the habeas trial that she had never met with Gerace alone and had never disclosed any personal information to him, including mental health matters. Indeed, during closing arguments before the habeas court, the petitioner's counsel acknowledged that "we don't know what communications . . . Gerace had with . . . Sanchez . . . ." The petitioner further did not introduce into evidence as exhibits any documentary materials at his habeas trial. Put simply, the record of that trial contains no evidence to support a finding that Sanchez communicated privileged information to Gerace regarding her mental health. The court found—and we agree—that the petitioner asked it to "*assume* that . . . Sanchez revealed to . . . Gerace confidential details or documents concerning her mental state which would have been useful to his defense . . . ." (Emphasis in original.) Yet the court specifically found that "[n]o credible evidence was adduced at the habeas hearing to persuade the court that [information about Sanchez' mental health] was conveyed to Gerace by . . . Sanchez or withheld from use by him in the petitioner's defense."

As this court has observed, "[a]n actual conflict of interest is more than a theoretical conflict. The United States Supreme Court has cautioned that the possibility of conflict is insufficient to impugn a criminal conviction. . . . A conflict is merely a potential conflict of interest if the interests of the defendant may place the attorney under inconsistent duties at some time in the future. . . . To demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest impairment or compromise of his interests for the benefit of another party. . . . A mere theoretical division of loyalties is not enough. . . . If a petitioner fails to meet that standard, for example, where only a potential conflict of interest has been established, prejudice will not be presumed, and the familiar *Strickland* prongs will apply." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 127 Conn. App. 538, 550, 15 A.3d 658 (2011), aff'd, 308 Conn. 456, 64 A.3d 325 (2013). Because the record before us substantiates nothing more than a theoretical conflict, the petitioner cannot establish an actual conflict on the part of Gerace.

We therefore must consider the adequacy of the assistance rendered by Gerace under the familiar parameters of *Strickland*. Id. We conclude that the petitioner's conflict of interest claim cannot satisfy either of its prongs.

With respect to Gerace's performance as the petitioner's counsel, we note that the petitioner did not call Gerace as a witness at his habeas trial. He further did not offer any expert testimony to opine on the nature and quality of Gerace's performance. In addition, the April 7, 2009 transcript of the petitioner's violation of probation proceeding substantiates the habeas court's findings that Gerace (1) thoroughly and effectively cross-examined Sanchez and (2) produced the testimony of an alibi witness who refuted the contents of Sanchez' statement to the police.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 512–13, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009).

Significantly, Sanchez offered testimony at the violation of probation hearing that was favorable to the petitioner. In that testimony, Sanchez recanted her identification of the petitioner as the perpetrator of the offenses committed outside her home in the early morning hours of November 14, 2008.[6] On cross-examination, Gerace also elicited testimony from Sanchez indicating that, at the time of that incident, she was under the influence of Vicodin, which causes confusion for her. Given that favorable testimony and mindful of the presumption that counsel's conduct falls within the wide range of reasonable professional assistance, we cannot say that Gerace's decision not to impeach Sanchez' testimony by raising the issue of her mental health was anything but sound trial strategy. The petitioner, therefore, cannot demonstrate deficient performance on the part of Gerace.

The record further undermines any claim of prejudice resulting from Gerace's alleged failure to impeach Sanchez' testimony by raising the issue of her mental health. In revoking the petitioner's probation, the trial court did not credit Sanchez' testimony, but rather relied on

her *Whelan* statement to the police made on the date of the incident. Moreover, the record before us lacks any credible testimonial or documentary evidence on which the trier of fact could conclude that, had Gerace conducted additional investigation or cross-examination into Sanchez' alleged mental health issues, there is a reasonable probability that the result of the proceeding would have been different. We therefore conclude that the habeas court properly denied the petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 558 n.2, 941 A.2d 248 (2008).

[2] The transcript of the April 13, 2009 plea proceeding substantiates the court's findings.

[3] Attempted arson in the second degree is a class B felony. General Statutes §§ 53a-51 and 53a-112 (b). It is punishable by a term of incarceration up to twenty years. General Statutes § 53a-35a (6).

[4] Early in that proceeding, the petitioner inquired as to the nature of an *Alford* plea. The following colloquy transpired:
"[The Petitioner]: What's an *Alford*?
"[The Petitioner's Counsel]: Saying that you didn't do it but you don't want to have a trial because you might get more time.
"The Court: Right.
"[The Petitioner]: Yeah.
"[The Petitioner's Counsel]: That's what he wants.
"The Court: Alright, put him to plea."

[5] In *Whelan*, our Supreme Court held that a prior written inconsistent statement of a nonparty witness is admissible for substantive purposes if the statement is signed by the declarant, who has personal knowledge of the facts stated, and the declarant testifies at trial and is available for cross-examination. *State* v. *Whelan*, supra, 200 Conn. 753.

[6] Sanchez testified in relevant part: "I made an identification [to the police] but . . . I was not sure about it. . . . When I go through traumatic things I really don't—it's hard for me to be focused at that point and remember certain things." When confronted with the statement she provided to the police, the following colloquy transpired:
"[The Prosecutor]: Okay. I'm going to show you what's been marked as State's Exhibit 8 for identification purposes and . . . I'm going to ask you to just take a look at that. Okay? Is that the statement that you gave to the police that night?
"[Sanchez]: It's my signature so maybe. I don't remember detail by detail what I told them that night.
"[The Prosecutor]: Okay. Do you remember telling the police that night I recognized [the petitioner] and I had a clear view of his face. [He] was dressed all in black.
"[Sanchez]: No, I don't remember telling them that.
"[The Prosecutor]: Do you remember telling them, I broke up with [the petitioner] recently and he has been very angry with me?
"[Sanchez]: I don't recall that neither, sir.
"[The Prosecutor]: Do you remember telling the police that you were afraid of [the petitioner], that he would hurt you?
"[Sanchez]: I don't recall that neither, sir.
"[The Prosecutor]: And do you remember telling the police that—and I'm reading from your statement—that you saw the face and recognized it as my children's father. . . .
"[Sanchez]: I remember telling the police officer that it looked like my kids' father, but I was always never for certain if it was or if it was not."