STATE OF CONNECTICUT *v.* LEROY HARRIS
(8101)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 15—decision released July 17, 1990

*Patricia Buck Wolf,* special public defender, with whom, on the brief, was *Grace A. Luppino,* certified legal intern, for the appellant (defendant).

*Paul J. Ferencek,* deputy assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, and *James Clark,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, after a jury trial, of three counts of robbery in the first degree, in violation of General Statutes §§ 53a-134 (a) and 53a-8, and sexual assault in the first degree, in violation of General Statutes § 53a-70 (a). He claims that the trial court should not have admitted into evidence a prior written inconsistent statement and an audio tape through a witness other than the nonparty declarant. He also claims that he was denied due process of law and a fair trial due to the state's failure to produce a missing, exculpatory police report. We affirm the trial court's judgment.

The jury could have reasonably found the following facts. On May 21, 1983, at approximately 1:45 a.m., the defendant and two other persons robbed a victim (V1) in front of 138 Whalley Avenue, New Haven. The two other perpetrators were Jerome Downing and Charles Myers. During that robbery, one of the three displayed a handgun and subsequently stole car keys and $40 in cash from V1. The three then left in a 1973 Chevrolet Impala, a car that V1 had borrowed from another person.

Shortly thereafter, two females made a wrong turn onto Hamilton Street, a dead end street in New Haven. As the driver attempted to turn the car around, the vehicle was blocked by a Chevrolet Impala. Downing, armed with a handgun, went to the driver's side of the vehicle, while the defendant and Myers went to the other side of the car. Downing pointed a gun at the victim on the driver's side (V2) and ordered that the doors be unlocked. The doors were unlocked and Downing then grabbed jewelry from V2 while the defendant and Myers grabbed jewelry from the female on the passenger's side (V3). A pocketbook was also stolen. Downing then ordered V2 into the back seat of the vehicle whereupon he sexually assaulted her. Meanwhile, the defendant sexually assaulted V3 in the front seat of the

car and Myers waited outside the Impala. Myers, who did not engage in the sexual assaults, then called for his two cohorts. The defendant left the victim's car and he and Myers left the scene in the Chevrolet Impala. Downing remained in the victims' car, jumped to the front seat and drove the car to the "Hill" section of New Haven, where he again sexually assaulted V2. Downing then left the car and took off on foot. Following this incident, V2 and V3 returned to Hamilton Street to retrieve lost items. The police had already been notified and were present when the victims arrived. V2 and V3 were taken to Yale-New Haven Hospital for treatment. Following treatment, they went to the New Haven police department and gave statements. On August 27, 1985, Downing, while under arrest, gave a statement to the police that was tape-recorded and transcribed to writing. In that statement, Downing claimed that the defendant was involved in this incident. The police obtained an arrest warrant and subsequently arrested the defendant.

During the trial, V1 identified the defendant as one of the three perpetrators of the robbery against him. Both V2 and V3 also identified the defendant as the person who went to the driver's side of the car containing the victims and robbed and sexually assaulted V3. The remaining facts pertaining to the trial will be discussed with the respective issues. The jury convicted the defendant and this appeal followed.

I

In his first claim, the defendant contends that the trial court should not have admitted into evidence the audio tape and written statement that was a transcription of the audio tape, because these prior inconsistent statements did not meet the criteria set forth in *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

The following facts are relevant to this issue. During the trial, Downing was called to testify as a state's witness. He testified that he and two other males participated in the robbery of V1 and the robbery and sexual assault of V2 and V3. He named Myers as a second participant on direct examination but testified that he did not know the third male involved, nor did he see him in the courtroom. The state then began its offer of proof on admitting the audio tape and the written transcript into evidence. Downing testified, however, that, even though it may have been his signature on the statement, he had never read the statement and had given it in order to obtain a better disposition of the outstanding charges against him. He further testified that the police had suggested to him that Harris was involved in the crimes and that he agreed in order to "beat the system." Neither the written statement nor the audio tape was admitted into evidence through Downing. Instead, the state called Detective John Datillo, a New Haven police officer. Datillo first testified that Downing was not coerced into making the statement. Datillo also testified that he was present when Downing gave his statement through Datillo. The court, over the defendant's objection, admitted this evidence through Datillo.

The defendant makes a two-part claim that the admission of this evidence violated the rule in *State* v. *Whelan,* supra. First, he claims that the written statement and audio tape could not be admitted as substantive evidence because *Whelan* imposes a duty on the state to conduct extensive cross-examination of the declarant. Second, he claims that *Whelan* requires that in order for a prior written inconsistent statement to be admitted substantively, it must be admitted through the declarant. We do not agree.

In *State* v. *Whelan,* supra, our Supreme Court abandoned the traditional rule on the use of prior written

inconsistent statements.[1] Previously, all prior inconsistent statements were admitted into evidence only for impeachment purposes. The Supreme Court modified that rule and permitted the substantive use of prior written inconsistent statements as long as they are written or tape recorded; see footnote 1, supra; signed by the declarant and made with personal knowledge of the facts stated, provided that the declarant *testifies at trial and is subject to cross-examination. State* v. *Whelan,* supra, 753; see also *State* v. *Almeda,* 211 Conn. 441, 452, 560 A.2d 389 (1989); *State* v. *Wilson,* 17 Conn. App. 97, 99, 550 A.2d 21 (1988).

The defendant first argues that the requirement that the declarant be subject to cross-examination imposes a duty on the state to conduct extensive cross-examination of the declarant.[2] This claim has no merit.

The requirement that the declarant be "subject to" cross-examination is not synonymous with imposing a duty on the party presenting the witness to subject the declarant to cross-examination while on the stand. See footnote 2, supra. Although the state in *Whelan* declared its witness a hostile witness, and proceeded to cross-examine him as such, we read no such requirement from the language in *Whelan.* In *State* v. *Green,* 16 Conn. App. 390, 397, 547 A.2d 916, cert. denied, 210 Conn. 802, 553 A.2d 616 (1988), this court determined that the declarant's prior written inconsistent statement was admissible as substantive evidence where the declarant, the state's witness, testified at

---

[1] In *State* v. *Whelan,* 200 Conn. 743, 754 n.9, 513 A.2d 86 (1986), the court also said that its rule would apply to tape recorded statements, such as the audio tape in this case, because they possess the same indicia of reliability.

[2] In his brief, the defendant mischaracterizes this requirement by asserting that *Whelan* requires that the declarant be *subjected to* cross-examination, rather than *subject* to cross-examination. For the reasons set forth in the opinion, this is a complete mischaracterization.

trial and was subject to cross-examination *by the defendant* about the contents of the statement.

On the basis of the holding in *Green,* we conclude that the *Whelan* requirement that the declarant be subject to cross-examination only requires that the opposing party, not the offering party, have the opportunity to cross-examine the witness. In the present case, once the statements were admitted into evidence, the defendant had the opportunity to recall Downing and to conduct cross-examination. The state was not required to cross-examine its witness.

The defendant also claims that the court should not have admitted this evidence through a witness who was not the declarant. We disagree. Downing testified that he was coerced into making the statement implicating the defendant and that he never read the transcript. Datillo, the state's witness, was appropriately called to testify that the police did not coerce Downing into making that statement. More importantly, this same witness, through whom the evidence was admitted, testified that Downing made the statement in his presence. We hold that *Whelan* does not mandate that the declarant be the party through whom the evidence is admitted. The declarant was available to testify and could have been cross-examined following the admission of this evidence. The jury was able to observe and examine the declarant's demeanor. See *State* v. *Whelan,* supra, 755. Further, the evidence was admitted through a witness who had personal knowledge that the declarant made the statement.

## II

The defendant next claims that he was denied due process and a fair trial due to the state's failure to produce a missing, exculpatory police report.

During the trial, Robert Thompson testified that he was the record owner of the Chevrolet Impala that was stolen from V1. He testified that, following the incidents, he searched throughout New Haven for his car and eventually discovered it in the "Hill" section of New Haven. He then testified that he called the police and that they impounded the vehicle overnight and he picked it up the next day. The state called Datillo, and on cross-examination Datillo testified that if the police had recovered a green Impala, then they would have generated a police report. He also testified about police procedure for recovery of stolen cars and cars that have been involved in the commission of a crime. He testified that, although he was not involved in the particular recovery of the Impala, it would have been part of the normal procedure to inspect the vehicle and take fingerprint lifts, *if* the police were aware that the vehicle has been used in the commission of a crime. He testified that if a vehicle is dusted for fingerprints, a report would be generated.

At the beginning of the next day in court, the defendant moved to dismiss the charges against him, pursuant to Practice Book § 747. He claimed that there were police reports that he should have received that he did not receive, and that the state's attorney should have known that these reports existed on the bases of information in the affidavit to the defendant's arrest warrant and the testimony of the state's witness. The defendant's initial claim was that statements in a police report that he did not receive, but that were referred to by Datillo in his testimony, were used in preparing the affidavit. In the course of his argument, he raised two subjects for which there could have been missing police reports. One concerned possible inconsistent statements that V1 had made to the police as opposed to his testimony. The other was a vague reference to testimony from Thompson that he contacted the police

when he discovered his Chevrolet Impala in the Hill section of New Haven following the incidents.

The court denied the defendant's motion, but permitted him to subpoena the records of the New Haven police for an in camera inspection and granted him a continuance for that purpose.

At the next court date, the state explained that the subpoenaed documents were delivered and inspected by both parties. These documents collectively were called "Court's Exhibit 2." The state's attorney indicated that the state and the defendant stipulated that he would read out loud two sentences from a newly discovered police report in which V1 gave an initial description of three robbers that was inconsistent with his testimony.

The state's attorney then stated, without objection by the defense counsel, that "I think that ends the issue of the motion yesterday concerning discovery."

On appeal, the defendant claims that despite his request and subpoena for a missing police report concerning the recovery of the Impala, no report was given. He argues that the failure to disclose this report violated his constitutional rights as set forth in *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and in violation of General Statutes § 54-86c.[3]

Contrary to the defendant's claim that he received no police report, the state, on appeal, has shown that

---

[3] "This statute 'reflect[s] the constitutional obligation of a prosecutor to disclose all material evidence favorable to an accused in his possession, an obligation that exists without statutory . . . mandates.' *State* v. *Packard,* 184 Conn. 258, 277, 439 A.2d 983 (1981). Therefore, if the state's constitutional duty to disclose exculpatory evidence pursuant to *Brady* has not been violated, then neither has § 54-86c been violated." *State* v. *Shannon,* 212 Conn. 387, 396 n.6, 563 A.2d 646 (1989).

a police report made by Officer Kevin Boucher, a New Haven police officer, concerning the recovery of the Impala was included in Court's Exhibit 2.

In that report there is an indication that the car was "towed for processing." There is no indication in that report, or in this record, that fingerprints were lifted from the vehicle at issue. Further the defendant presented no testimony that at the time the car was recovered, the police were aware that it was used in the commission of a crime. The defendant, therefore, has not established that there was another police report or missing parts of Boucher's report concerning the recovery of this vehicle that should have been disclosed. The defendant's only claim is that he never received a police report concerning the recovery of the Impala. The record shows that he did.

The judgment is affirmed.

In this opinion the other judges concurred.