STATE OF CONNECTICUT *v.* PATRICK CORBIN
(AC 20436)

Landau, Schaller and Callahan, Js.

Argued September 25, 2000—officially released January 30, 2001

*James B. Streeto*, deputy assistant public defender, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Joan K. Alexander*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Patrick Corbin, appeals from the judgment of conviction, rendered after a jury trial, of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[1] one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2)[2] and one count of risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21.[3] On appeal, the defendant claims

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[3] General Statutes (Rev. to 1995) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

that the trial court improperly (1) denied his motion to suppress a confession he made to the police, (2) failed to instruct the jury as requested regarding its role in evaluating the credibility of his confession, (3) admitted into evidence for substantive purposes a prior inconsistent statement made by a witness, (4) refused to disclose all of the psychiatric records of a witness and all of the notes of an investigating police officer, (5) denied the defendant's motion for a judgment of acquittal on the charge of kidnapping in the first degree because of insufficiency of the evidence, and (6) rejected his request to instruct the jury on unlawful restraint in the first degree and unlawful restraint in the second degree as lesser included offenses of kidnapping in the first degree. We affirm in part and reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of July 28, 1995, the six year old victim was fishing with two other children at a pond. The defendant, who was at the pond, saw the children and approached them. He offered to show the children a better fishing spot and led them along a dirt trail into a wooded area. The victim continued to follow the defendant but, along the way, the other two children stopped because they noticed that the defendant was drinking beer and may have been intoxicated.

Upon reaching an isolated part of the wooded area, the defendant sexually assaulted the victim. He placed his hand over her mouth and threatened that if she screamed, he would kill her. Thereafter, the defendant removed the victim's clothes and placed them in some bushes. He then vaginally penetrated the victim and also performed cunnilingus on her. During the assault, the victim pleaded with the defendant to stop hurting her, but he failed to comply. The entire attack lasted approximately forty-five minutes.

Subsequently, two witnesses saw the defendant running out of the wooded area. Once out of that area, he went to his vehicle and drove off. Meanwhile, the victim went home and reported the incident to her mother, who immediately took her to a hospital. A police officer came to the hospital and took the victim's statement.

The next day, Detective Edward Spyros went to the defendant's apartment and asked the defendant to accompany him to the police station. The defendant agreed to do so and at the police station confessed to assaulting the victim. Although audio and video recording equipment was available at the police station, Spyros failed to utilize such equipment to capture the defendant's confession and, instead, simply reduced it to writing. The state then charged the defendant with the aforementioned crimes. At trial, the defendant requested that the court provide the jury with an instruction regarding the reliability of his confession,[4] but his request was denied. The jury later found the defendant guilty on all counts. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the court improperly denied his motion to suppress a confession he made to the police. To support that claim, the defendant

---

[4] The defendant filed a request to charge, asking that the jury consider the circumstances under which his confession was taken. That request stated in relevant part:

"6. Statement Attributed to the Defendant

"The defendant claims that the statement taken by the . . . police department, which the state has attributed solely to him, is unreliable. The law permits you to consider the circumstances under which a statement was taken, including a lack of corroboration for the statement, the failure by the police to electronically record the statement, and the physical condition and mental capability of the defendant in determining the weight to be afforded to it. Accordingly, in this case, it is your task to determine the sufficiency and the weight to be afforded to this statement in light of all attendant circumstances. . . ."

advances the following three arguments: (1) the court improperly found that he was not in custody at the time and, therefore, his *Miranda*[5] rights had not yet attached, (2) he did not make a knowing and intelligent waiver of his *Miranda* rights, and (3) the confession was not made voluntarily. We are not persuaded.

The following additional facts are necessary for the resolution of this claim. On July 29, 1995, Spyros, in an unmarked car and dressed in plain clothes, went to the defendant's apartment. Spyros asked the defendant if he would accompany him to the police station to answer questions regarding an incident that had occurred on the previous day. Spyros also indicated to the defendant that his cooperation was completely voluntary. In addition, Spyros offered to drive the defendant and stated that if he changed his mind at any time, he would personally drive the defendant back home. After those initial remarks, the defendant agreed to accompany Spyros to the police station.

Upon leaving his apartment, the defendant rode in the front passenger seat of the unmarked police car. The defendant was not placed in handcuffs or any other restraints. The defendant did not ask if he could drive to the station in his car and entered the police vehicle voluntarily.

Upon reaching the station, Spyros escorted the defendant to the interview room. The defendant, at that point, had not been placed under arrest. Nevertheless, Spyros read the defendant his *Miranda* rights. The defendant, who indicated that he understood his rights, then initialed each of the five rights listed on the standard waiver of rights form and signed that document. At that point, Spyros reminded the defendant that he was not under arrest and that he was free to leave at any time,

---

[5] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

but the defendant nonetheless remained at the police station.

Subsequently, the defendant gave oral statements confessing to his involvement in the incident of July 28, 1995. Spyros questioned the defendant for about forty-five minutes and then typed a written statement to record the defendant's confession. The defendant read and signed the confession. During that time, the defendant was allowed to smoke and was not restrained. The entire interrogation took less than two hours.

A

We first address the defendant's claim that the court improperly determined that he was not in custody at the time of his confession and, therefore, that his *Miranda* rights had not yet attached. We are not persuaded.

For *Miranda* rights to attach, the following two requirements must be met: "(1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation. *Miranda* v. *Arizona*, [384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)]." (Internal quotation marks omitted.) *State* v. *Atkinson*, 235 Conn. 748, 757, 670 A.2d 276 (1996). "[A]lthough the circumstances of each case must certainly influence a determination of whether a suspect is in custody for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. . . . Further, the United States Supreme Court has adopted an objective, reasonable person test for determining whether a defendant is in custody. . . . Thus, in determining whether *Miranda* rights are required, *the only relevant inquiry is whether a reasonable person in the defendant's position would believe that he or*

*she was in police custody of the degree associated with
a formal arrest. . . .*

"In [*State* v. *DesLaurier*, 230 Conn. 572, 578, 646 A.2d
108 (1994)], our Supreme Court stated: The defendant
had the initial burden of proving custodial interrogation.
. . . The trial court's determination that the defendant
was not in custody is a finding of fact. . . . That finding
of fact by the trial court will not be overturned unless
it is clearly erroneous. . . . We will, however, carefully
review the record to ascertain whether the trial court's
finding is supported by substantial evidence." (Citations
omitted; emphasis in original; internal quotation marks
omitted.) *State* v. *Harris*, 46 Conn. App. 216, 226, 700
A.2d 1161, cert. denied, 243 Conn. 930, 701 A.2d 662
(1997).

Recently, our Supreme Court clarified the proper
scope of appellate review of a trial court's determina-
tion of custody. See *State* v. *Pinder*, 250 Conn. 385,
411–13, 736 A.2d 857 (1999). It noted that the term
"substantial evidence" should not be misinterpreted so
that the reviewing court treats a trial court's determina-
tion of custody with complete deference. Our Supreme
Court stated: "In spite of our prior use of the 'substantial
evidence' language . . . our approach long has been
to conduct a *plenary review* of the record in order to
make an independent determination of custody."
(Emphasis added.) Id., 412. With that clarified scope of
review in mind, we now turn to the present case.

After carefully reviewing the record, we conclude
that there is ample evidence supporting the court's
determination that the defendant was not in custody.
Spyros told the defendant at his apartment that any
cooperation was completely voluntary, and the defen-
dant voluntarily agreed to accompany Spyros to the
police station. The defendant, while on the way to the
police station, was not placed in handcuffs or other

restraints. Upon reaching the police station, Spyros read the defendant his *Miranda* rights and again told him he was free to leave before questioning him. A reasonable person would not have believed that he was in custody when told repeatedly that he may feel free to leave before any questioning. See *State* v. *Greenfield*, 228 Conn. 62, 71 n.10, 634 A.2d 879 (1993) ("an important factor distinguishing a consensual encounter from a seizure is whether the police expressly informed the defendant that he was free to leave at the outset of the interview"). On the basis of those circumstances, we conclude that the court properly found that the defendant was not in custody and, accordingly, that his *Miranda* rights had not yet attached.

B

The defendant also claims that the court should have suppressed his confession because he did not make a knowing and intelligent waiver of his *Miranda* rights. "Pursuant to the fifth and fourteenth amendments to the United States constitution, a statement made by a defendant during *custodial interrogation* is admissible only upon proof that he . . . waived his rights [under *Miranda*] . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Huckaby*, 47 Conn. App. 523, 527, 706 A.2d 16 (1998). Because we concluded in part I A of this opinion that the defendant was not in custody and, thus, his *Miranda* rights had not yet attached, the defendant's waiver claim is irrelevant, and we decline to review it.

C

The defendant next claims that the court improperly denied his motion to suppress his confession because the confession was not made voluntarily. Specifically, the defendant asserts that the confession was involuntary due to his learning disability, limited education and limited experience with the police. We disagree.

"[T]he use of an involuntary confession in a criminal trial is a violation of due process. *Mincey* v. *Arizona*, 437 U.S. 385, 398, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Miranda* v. *Arizona*, supra, [384 U.S. 461–63]; *State* v. *DeAngelis*, 200 Conn. 224, 232, 511 A.2d 310 (1986). The state has the burden of proving the voluntariness of the confession by a fair preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Pinder*, supra, 250 Conn. 418.

As with the custody determination, our Supreme Court has also clarified the proper scope of appellate review of a trial court's determination of voluntariness. Id., 420–21; *State* v. *Lewis*, 60 Conn. App. 219, 246–47, 759 A.2d 518, cert. denied, 255 Conn. 906, 762 A.2d 911 (2000). "To begin, we note the established rule that the [t]rial court's findings as to the circumstances surrounding the defendant's interrogation and confession are findings of fact . . . which will not be overturned unless they are clearly erroneous. . . . In its review of state court determinations of voluntariness, the United States Supreme Court long has concluded that the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination. . . . Consistent with the well established approach taken by the United States Supreme Court, we review the voluntariness of a confession independently, based on our own scrupulous examination of the record. The ambiguity apparent in our prior cases is that, while correctly citing to the relevant federal case law for the proposition that we will conduct an independent determination of voluntariness . . . we also have continued to state in these same cases that [o]n the ultimate issue of voluntariness . . . we will conduct an independent and scrupulous examination of the entire

record to ascertain whether the trial court's finding is supported by substantial evidence. . . .

"Our continued use of the substantial evidence language, when it is inconsistent with the plenary review that we in fact conduct, perpetuates a misstatement of the law. We . . . clarify, therefore, that applying the proper scope of review to the ultimate issue of voluntariness requires us, not to ascertain whether the trial court's finding is supported by substantial evidence, but to conduct a plenary review of the record in order to make an independent determination of voluntariness." (Citations omitted; internal quotation marks omitted.) *State* v. *Pinder,* supra, 250 Conn. 420–21. Having that clarified standard of review in mind, we now must determine whether the defendant's confession was voluntary.

We make such a determination by examining the totality of the circumstances surrounding the confession, and determining whether the "confession [was] the product of an essentially free and unconstrained choice by the maker. . . . Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep." (Citations omitted; internal quotation marks omitted.) *State* v. *James,* 237 Conn. 390, 410–11, 678 A.2d 1338 (1996).

Applying those factors to the present case, we conclude that the facts overwhelmingly support the court's determination that the defendant's confession was voluntary. The defendant was an intelligent adult who was able to read and write. There was no evidence suggesting that he was physically abused or restrained.

Moreover, the defendant, while at the police station, was aware that he could leave at any time. Despite that knowledge, he chose to remain there for about two hours. After conducting a plenary review of the entire record, we conclude that the court properly determined that the defendant's confession was made voluntarily.

## II

The defendant next claims that the court improperly failed to give the jury his requested instruction regarding its role in evaluating the credibility of his confession and its weight. According to the defendant, although the court instructed the jury on its duty to weigh the credibility of testimonial evidence, it failed to instruct the jury specifically concerning nontestimonial evidence or his confession. The defendant argues that his requested instruction regarding his confession was necessary because his confession was a significant piece of evidence at trial. We disagree.

Our standard of review for challenges to jury instructions is well settled. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . [this court] will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Whitley*, 53 Conn. App. 414, 423, 730 A.2d 1212 (1999).

"In reviewing the charge as a whole, the instructions need not be perfect, as long as they are legally correct, adapted to the issues and sufficient for the jury's guid-

ance. . . . The test to be applied to any part of a charge is whether the charge, considered in its entirety, presents the case to the jury so that no injustice will result." (Citation omitted; internal quotation marks omitted.) *State* v. *Mackor*, 11 Conn. App. 316, 326, 527 A.2d 710 (1987); see also *State* v. *Lepri*, 56 Conn. App. 403, 412–13, 743 A.2d 626, cert. denied, 253 Conn. 902, 753 A.2d 938 (2000).

We conclude that no injustice resulted from the court's failure to give the defendant's requested jury instruction regarding his confession. The court's instructions did not mislead the jury as to the law, which assigns different roles to the court and the jury in assessing a confession. "While the preliminary question of admissibility of a confession is for the court, the credibility and weight to be accorded the confession is for the jury." *State* v. *Vaughn*, 171 Conn. 454, 460–61, 370 A.2d 1002 (1976). Contrary to the defendant's argument, that rule does not require the court to give a particular instruction to the jury regarding the credibility of his confession simply because his confession was a significant piece of evidence. A court has discretion in determining what instructions a jury is to receive. See, e.g., *State* v. *Nguyen*, 52 Conn. App. 85, 96, 726 A.2d 119 (1999) ("'a trial judge retains discretion to determine whether the jury should receive a special instruction with respect to the credibility of a young witness'"), aff'd, 253 Conn. 639, 756 A.2d 833 (2000). We conclude that the court was not required to give the requested instruction to the jury. Accordingly, we review the charge as a whole to determine if the court's instructions adequately guided the jury in its task of evaluating all of the evidence, including the defendant's confession.

In its opening instruction to the jury in the present case, the court explained that the jury's role differed from the court's role and stated: "[O]ur functions are

very distinct; yours, to find the facts and to ultimately determine the guilt or nonguilt of this defendant on six charges. Mine is totally separate and has to do with attempting to have the trial proceed without undue delay and to put before you only admissible evidence. . . ." After that initial statement, the court instructed the jury on reasonable doubt and its duty of evaluating *all* of the evidence. The court stated: "What the law does require is [that] after hearing *all the evidence,* if there's something in that evidence or lack of evidence which leaves . . . a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted." (Emphasis added.) That instruction undermines the defendant's assertion that the court failed to instruct the jury with respect to nontestimonial evidence. Viewed in combination, those two instructions adequately informed the jury of its distinct role of evaluating the credibility of the defendant's confession.

Further examination of the charge also reveals that the court referred to *all* of the evidence, not just the testimonial evidence. It is true that the court instructed the jury at length on its role in evaluating the weight and credibility of the testimonial evidence. While doing so, however, the court paused to remind the jury of its duty to evaluate *all* of the evidence. It stated: "In determining whether or not the defendant was the person who was involved in the crimes charged, *you should take into consideration all of the evidence. . . ."* (Emphasis added.) Considered in its entirety, the jury instructions were correct in law and sufficient to guide the jury in its task of evaluating *all* of the evidence, including the defendant's confession.

Events that occurred during the trial lead us to the same conclusion. The defendant repeatedly argued that the jury should give his confession little weight because of the circumstances under which it was obtained. That,

of course, made the jury aware that the credibility of the defendant's confession was seriously disputed at trial. In addition, although the confession was a significant piece of evidence, it was not the only evidence of the defendant's guilt. The state introduced at trial the testimony of several witnesses who provided circumstantial evidence against the defendant. We conclude, therefore, that the court properly instructed the jury so that no injustice resulted.

## III

The defendant also claims that with respect to his conviction of the third count of sexual assault in the first degree, the court improperly admitted into evidence for substantive purposes the victim's prior written statement under *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). Specifically, the defendant claims that the court improperly allowed into evidence the victim's written statement to the police on July 28, 1995, because (1) the statement was not signed by the declarant and (2) it was not proffered into evidence through the declarant. We agree with the defendant's first argument and reject his second argument.[6]

---

[6] In *Whelan*, our Supreme Court "adopted the rule allowing the substantive use of a prior inconsistent statement if: (1) the statement is in writing; (2) it is signed by the declarant; (3) the declarant has personal knowledge of the facts set forth in the statement; and (4) the declarant testifies at trial and is subject to cross-examination." *State* v. *Hopkins*, 222 Conn. 117, 123, 609 A.2d 236 (1992), citing *State* v. *Whelan*, supra, 200 Conn. 753. The defendant claims, under the fourth prong of *Whelan*, that the court improperly admitted the victim's prior statement into evidence through a witness who was not the declarant. That claim is without merit.

We considered and rejected this identical claim in *State* v. *Harris*, 22 Conn. App. 329, 577 A.2d 1077 (1990). There, we held that "*Whelan* does not mandate that the declarant be the party through whom the evidence is admitted." Id., 334. With regard to that issue, the facts in *Harris* are identical to those in the present case. We therefore conclude that *Harris* is controlling and reject the defendant's second claim.

The following additional facts are necessary for our resolution of this claim. After being sexually assaulted on July 28, 1995, the child victim went to a hospital emergency room with her mother. A police officer arrived at the hospital to interview the child and conducted the interview in the presence of the child's mother. The child recounted to the police officer what had happened regarding the sexual assault, and the police officer reduced her statement to writing. In the child's statement, she said at the time: "I forgot to tell you that before he put his pee pee inside me, he made me suck his weiner . . . ." Because the mother told the police officer that the victim could not read, the police officer read the statement back to the child. The police officer then had the mother sign the statement on behalf of the child.

The defendant was later charged with and convicted of four counts of the crime of sexual assault in the first degree in violation § 53a-70 (a) (2). As to count three, the defendant was convicted of violating the statute by forcing the child to perform fellatio on him. When called to testify at trial, the child testified about facts relating to counts one, two and four, but did not recall performing fellatio on the defendant. At that point, the state did not seek to introduce the child's previous written statement through the declarant herself. Instead, the state proffered it through the police officer who took the statement. The court, over the defendant's objection, admitted the portion of the child's statement regarding the fellatio as substantive evidence.

We begin our analysis by setting forth the requirements of *Whelan*. "In *Whelan*, we adopted the rule allowing the substantive use of a prior inconsistent statement if: (1) the statement is in writing; (2) it is signed by the declarant; (3) the declarant has personal knowledge of the facts set forth in the statement; and (4) the declarant testifies at trial and is subject to cross-

examination." *State* v. *Hopkins*, 222 Conn. 117, 123, 609 A.2d 236 (1992), citing *State* v. *Whelan*, supra, 200 Conn. 753.

The defendant first challenges the admission of the child declarant's prior written statement under the second prong of *Whelan* because the statement was signed by the declarant's mother rather than by the declarant herself. The state, on the other hand, contends that the declarant's signature is not mandatory because the mother's signature is an adequate substitute under circumstances in which the child declarant was unable to read or write. We agree with the defendant.

We conclude that *Whelan* should not be extended to cover circumstances in which a written statement is not signed by the declarant or recorded. Our Supreme Court in *Whelan* departed from the long-standing rule prohibiting the substantive use of prior inconsistent statements. In doing so, however, the court prescribed requirements to assure the reliability of such a statement. *State* v. *Whelan*, supra, 200 Conn. 753. It stated that "[a]lthough the requirement that prior statements be . . . signed by the declarant is not an absolute guaranty of reliability, it does provide significant assurance of an accurate rendition of the statement . . . ." Id., 754. Although we have disregarded the signature requirement in subsequent cases, we have done so only in the limited circumstances in which the declarant's statement was tape recorded. See *State* v. *Hermann*, 38 Conn. App. 56, 67–68, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995); see also *State* v. *Woodson*, 227 Conn. 1, 22, 629 A.2d 386 (1993).

The state relies on the *Woodson* case and argues that its logic extends to the present case. The mother's signature, according to the state, adequately establishes the reliability of the child's statement and, as such, the declarant's signature is unnecessary. The state's

reliance on *Woodson* is misplaced. In *Woodson*, our Supreme Court stated that "the requirement that [a tape-recorded statement] be signed is unnecessary because the recording of the witness' voice imparts the same measure of reliability as a signature." *State* v. *Woodson*, supra, 227 Conn. 21. The above proposition is true because the listener to a tape-recorded statement can identify the declarant's voice. In addition, a tape-recorded statement is inherently reliable because the words are captured directly from the declarant's own lips. That essentially eliminates the possibility of a transcription error, which is inherent in the use of a written statement, thereby rendering a tape-recorded statement more reliable than a written statement. That reliability makes the declarant's signature unnecessary to establish that a tape-recorded statement is accurate.

Unlike the situation in *Woodson*, reliability cannot be established in the present case. The police officer took the child declarant's statement in writing even though he believed the child was unable to read or sign her name. In the presence of the mother, the police officer read the statement back to the child and had the mother sign for the child. The child did nothing to examine, verify or adopt the accuracy of the statement. We conclude that, under the circumstances of this case, the signing by the mother of the child's statement on behalf of the child fails to satisfy *Whelan*. The court, therefore, improperly admitted the child declarant's statement for substantive purposes concerning the third count of sexual assault in the first degree.

Our inquiry, however, does not end there. We must next determine whether the improper admission of the statement was harmless. In making that determination, the allocation of the burden of persuasion will differ depending on whether the error amounts to a constitutional violation. If it does, then the state bears the burden of proving that it was harmless beyond a reasonable

doubt. *State* v. *Daugaard*, 231 Conn. 195, 212, 647 A.2d 342 (1994), cert. denied, 513 U.S. 1099, 115 S. Ct. 770, 130 L. Ed. 2d 666 (1995). An improperly admitted statement under *Whelan* does hinder a defendant's "opportunity to impeach a witness for motive, bias and interest [thereby implicating] the protection of the confrontation clause [under the sixth amendment to the United States constitution] . . . ." *State* v. *Portee*, 55 Conn. App. 544, 560 n.12, 740 A.2d 868 (1999), cert. denied, 252 Conn. 920, 744 A.2d 439 (2000). Thus, a constitutional violation is at issue, and the state must show that the admission of the statement was harmless. See id., 560–61 n.12.

"The correct inquiry for identifying harmless constitutional error is to ask whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. . . . Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial. . . . Any improper evidence that may have a tendency to . . . influence the judgment, of the jury, cannot be considered as harmless." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, 224 Conn. 325, 333, 618 A.2d 32 (1992).

Applying those standards to the present case, we are persuaded that the court's admission of the victim's statement was not harmless beyond a reasonable doubt. The victim's statement provided the crucial evidence to prove that the defendant forced the victim to perform

fellatio on him. Other than the defendant's confession, the state offered no evidence to prove that particular charge. Under those circumstances, we are not satisfied beyond a reasonable doubt that without the victim's statement the jury would have returned a guilty verdict on count three. We conclude, therefore, that the court's error in admitting the statement was not harmless and, thus, reverse the judgment on count three.

## IV

The defendant's fourth claim is that the court abused its discretion by denying him full access to documents pertaining to two witnesses after conducting an in camera review, thereby violating his right to confrontation. We are not persuaded.

The facts pertinent to this issue are as follows. At trial, the defendant sought access to two sets of documents for the purpose of cross-examination. The first set of documents was the psychiatric treatment records of Rene Girardin, while the second set of documents was the field notes of Spyros. Girardin was a state's witness who provided identification evidence against the defendant. The defendant, before trial, discovered that Girardin was an alcoholic and that he had received psychiatric treatment for his problem from the Rushford Center, Inc. The defendant subpoenaed Girardin's psychiatric treatment records under seal and requested the court to conduct an in camera review of them. After doing so, the court released eight redacted pages to the defendant.

The defendant also sought full access to Spyros' field notes. Spyros was one of the police officers investigating the defendant's case. During the entire investigation, Spyros had generated fourteen pages of field notes. The defendant, after discovering the existence of those notes, asked the court to review them in camera and release all relevant information. The court did so and

released seven of the fourteen pages to the defendant. In essence, the defendant claims that he was entitled to all of the material in both sets of documents because it may have been useful in cross-examination and, therefore, had probative value. We disagree.

A conflict exists between a defendant's right to confrontation and the public policy interest of preserving the confidentiality of certain records. *State* v. *Pratt*, 235 Conn. 595, 607–608, 669 A.2d 562 (1995). To balance those competing interests, a trial court must determine whether the records sufficiently disclose material "probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation." (Citation omitted.) *State* v. *Storlazzi*, 191 Conn. 453, 459, 464 A.2d 829 (1983). "Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis. . . . At this stage in the proceedings, when the trial court has reviewed the records in camera, access to the records must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records. . . . We review the trial court's decision under an abuse of discretion standard." (Citation omitted; internal quotation marks omitted.) *State* v. *Walsh*, 52 Conn. App. 708, 723, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999). In making such a determination, this court must conduct an in camera inspection of the sealed records. See *State* v. *Tyson*, 43 Conn. App. 61, 70, 682 A.2d 536, cert. denied, 239 Conn. 933, 683 A.2d 401 (1996).

We have carefully reviewed the two sets of disputed records in the present case and conclude that the court did not abuse its discretion. As for Girardin's psychiatric

treatment records, the court reasonably could have found that nothing of probative value existed in the material that it refused to release. The withheld material contained private information that would have been of no use to the defendant. Similarly, the court reasonably could have found that no evidence with probative value existed in the portion of Spyros' notes that the court refused to disclose. We conclude that the court did not abuse its discretion in denying the defendant access to certain material within the two sets of records.

V

The defendant next claims that the court improperly denied his motion for a judgment of acquittal on the kidnapping charge because there was insufficient evidence. Specifically, he claims that the state failed to present sufficient evidence to establish restraint, a crucial element of kidnapping. We are unpersuaded.

In reviewing claims of insufficiency of the evidence, an appellate court employs a two part analysis. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt

is shown by the cold printed record." (Citations omitted; internal quotation marks omitted.) *State* v. *Faria*, 47 Conn. App. 159, 186–87, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998).

The defendant is correct in stating that "restraint" is a critical element under the kidnapping statute. Section 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he *restrains* the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ." (Emphasis added.) General Statutes § 53a-91 defines the critical terms and provides in relevant part: "(1) 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . . (2) 'Abduct' means to restrain a person with intent to prevent his liberation by . . . (B) using or threatening to use physical force or intimidation."

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence from which the jury reasonably could have inferred that the defendant restrained the victim. The defendant lured the victim into a wooded area by deception. Upon reaching a secluded area, the defendant proceeded to assault her sexually. He placed his hand over the victim's mouth and threatened that if she screamed, he would kill her. Because the victim was six years old at the time, the jury reasonably could have found that the defendant's threat was intended to restrain her physically, not just to prevent her from screaming. See *State* v. *Tweedy*, 219 Conn. 489, 501, 594 A.2d 906 (1991) (sufficient evidence for kidnapping where defendant told victim he had gun he would use

if she screamed). In addition, the defendant removed the child's clothes and placed them in some bushes. The jury could have inferred that this action was intended to restrain the child from leaving. We conclude that there was sufficient evidence to support the jury's conviction of kidnapping in the first degree.

## VI

The defendant's final claim is that the court improperly rejected his written request to instruct the jury on unlawful restraint in the first degree and unlawful restraint in the second degree as lesser included offenses of kidnapping in the first degree. We do not agree.

"There is no fundamental constitutional right to a jury instruction on every lesser included offense; *State v. Whistnant*, 179 Conn. 576, 583, 427 A.2d 414 (1980); rather, the right to such an instruction is purely a matter of our common law. A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following [*Whistnant*] conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Internal quotation marks omitted.) *State v. Morris*, 49 Conn. App. 409, 413–14, 716 A.2d 897, cert. denied, 247 Conn. 904, 720 A.2d 516 (1998).

The defendant argues that he satisfied all of the prongs of *Whistnant*. The state concedes that the defendant satisfied the second and third prongs of *Whistnant,* but it argues that the defendant failed to satisfy the first and fourth prongs. Our discussion will begin with an analysis of the first prong.

Before doing so, however, we must set forth our standard of review applicable to *Whistnant* requests. "In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant,* supra, 179 Conn. 588, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. *State* v. *Montanez,* 219 Conn. 16, 22–23, 592 A.2d 149 (1991); *State* v. *Herring,* 210 Conn. 78, 106, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Tomasko,* 238 Conn. 253, 260–61, 681 A.2d 922 (1996).

We now turn to the issue of whether, under the first prong of *Whistnant,* the defendant's request to charge was an appropriate instruction. "A proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book [§ 42-18]. *State* v. *Hall,* 213 Conn. 579, 591, 569 A.2d 534 (1990); *State* v. *Ostroski,* [201 Conn. 534, 556–58, 518 A.2d 915 (1986)]; *State* v. *McIntosh,* [199 Conn. 155, 158–61, 506 A.2d 104 (1986)]." *State* v. *Tomasko,* supra, 238 Conn. 261. Practice Book § 42-18 (a) provides in relevant part: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the

evidence to which the proposition would apply. . . ." Our Supreme Court has held that "in the context of a written request to charge on a lesser included offense, [the] requirement of [§ 42-18] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested." (Internal quotation marks omitted.) *State* v. *Hall*, supra, 591.

In his request to charge, the defendant failed to meet the requirements of Practice Book § 42-18 in several respects. First, his written request did not place the lesser included offense of unlawful restraint in the first degree in a separate paragraph. Rather, he lumped several lesser included offenses all under one paragraph. Second, although the defendant placed the lesser offense of unlawful restraint in the second degree in a separate paragraph, he failed to include a complete statement of the essential facts to justify the charge as requested. The defendant merely recited the relevant statutory sections pertaining to unlawful restraint in the second degree along with a comparison to the charged kidnapping statute.[7] Those omissions made the

---

[7] The defendant's request to charge, in relevant part, was as follows:

"10. Second Degree Unlawful Restraint

"The offense of unlawful restraint in the second degree is defined as follows: 'A person is guilty of unlawful restraint in the second degree when he restrains another person.'

"The difference between this offense and kidnapping in the [first] degree is that, in kidnapping, there must not only be a restraining but there must also be an abduction; and an abduction, you will recall, is a restraining with the specific intent to prevent liberation by the use or threat of physical force or intimidation. Here, however, there need only be a restraining, without the necessity of proof of intent to prevent liberation by force or intimidation.

"I will repeat the definition of 'restrain' here for you. 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him in the place where the restriction first begins or in a place to which he has been moved, without consent. This is the same definition of restrain as applied under kidnapping, and it means the same things here as I defined for you there. I am not going to repeat

requested instruction confusing, which Practice Book § 42-18 seeks to prevent. Our Supreme Court has stated: "While this court does not favor unyielding adherence to rules of procedure where the interests of justice are thereby disserved . . . the ever increasing refinement of our law justifies cooperation of counsel in stating requests for jury instruction. The minor burden of cooperation imposed by [Practice Book § 42-18] is neither unreasonable nor novel." (Internal quotation marks omitted.) *State* v. *Tomasko*, supra, 238 Conn. 262. We conclude that the defendant failed to make a proper request under the first prong of *Whistnant*. The court, therefore, properly refused the defendant's request to instruct the jury on unlawful restraint in the first degree and unlawful restraint in the second degree as lesser included offenses of kidnapping in the first degree.[8]

The judgment is reversed as to the conviction of sexual assault in the first degree in count three of the information and the case is remanded with direction to render a judgment of acquittal on that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

all that I explained to you under kidnapping, regarding the meaning of intentionally, unlawfully, interference with liberty, consent, and the lack of any required minimum time of restraint or distance of moving. All that I said with respect to those matters under kidnapping you should recall and apply under this offense of unlawful restraint in the second degree.

"Therefore, if you find that the defendant restrained [the victim] as that term has been defined for you, you should find him guilty of the lesser included offense of unlawful restraint in the second degree. . . ."

[8] Having concluded that the defendant failed to satisfy the first prong of *Whistnant*, we need not consider the fourth prong. See *State* v. *McPhee*, 58 Conn. App. 501, 517, 755 A.2d 893, cert. denied, 254 Conn. 920, 759 A.2d 1026 (2000).